DENNIS MURTO

v.

CHARLES McKNIGHT.

*Statute of Frauds—Promise to Pay the Debt of Another—Instruction—Evidence—Practice.*

1. A parol agreement to pay the debt of another is within the statute of frauds, unless the same is in the nature of an original undertaking and

is based upon a valuable consideration received by the promisor.

2   A promise by a son to pay the father's debt to enable the latter to have his property removed from the State without interference, the relation of debtor and creditor between the original parties remaining unchanged, is within the statute of frauds.

3.   In the case presented, the defense of the statute of frauds was properly admitted under the stipulation that all material matters should be admitted under the general issue as if specially pleaded.

[Opinion filed December 8, 1888.]

APPEAL from the Circuit Court of Mercer County; the Hon. ARTHUR A. SMITH, Judge, presiding.

Messrs. PEPPER & SCOTT, for appellant.

A contract was made between Charles McKnight, the defendant, and Dennis Murto, the plaintiff, by which Murto agreed to forbear instituting proceedings against Robert McKnight's property and to wait until the end of the year for the money.

This agreement to pay a sum of money is good and binding in law, and it does not matter that it was and is the exact amount due from Robert McKnight to appellant, nor that it had been due and owing.   It is of no consequence that it is the same, or more, or less.

Any consideration is good in law if it is appreciable.   The giving of a pepper-corn a year is a sufficient consideration in law.   Hence the benefits to the party promising or the prejudice to the one to whom the promise is made need not be very great; it is enough if it is perceptible.   Wadsworth et al. v. Thompson, 3 Gilm. 428.

"The moral obligation to fulfill a promise voluntarily made is not denied; for this reason courts have been always anxious to support promises when the slightest consideration can be made to appear."   The above principles laid down in the case quoted have never been challenged or doubted.

Any act which is beneficial to one party or a disadvantage to the other is a sufficient consideration to support a contract. Burch v. Hubbard, 48 Ill. 164; Buchanan v. International

Bank, 78 Ill. 500; Cooke v. Murphy et al., 70 Ill. 96; Bishop v. Busse, 69 Ill. 403.

An agreement not to sell property or to release securities, an agreement not to sue or to dismiss suits already begun, as well as agreements to compromise a doubtful claim, are good and binding in law. McKinly v. Watkins, 13 Ill. 140; Parker v. Enslow, 102 Ill. 272; Pool v. Docker, 92 Ill. 501; Edgerton v. Weaver, 105 Ill. 45.

And they are just as binding if made on the part and behalf of another. Sigsworth was sued for allowing a cow in his care to be lost. His brother agreed to give and gave a note for the value of the cow if the suit should be dismissed, and it was held to be a good consideration for the note, and it could not be impeached. Sigsworth v. Coulter, 18 Ill. 204.

And it is not necessary that the promisor should be benefited in the least by the transaction, if the party to whom the promise is made is put in a worse condition. Hartford Fire Ins. Co., 97 Ill. 439.

If it was a promise to pay the debt of Robert McKnight, it was not within the statute of frauds, because it was based on the new and distinct consideration that the plaintiff, Dennis Murto, would let Robert McKnight go unmolested with his property from the State of Illinois, and thereby lose his opportunity to collect his debt. Brown on the Statute of Frauds, 212.

In Leonard v. Vredenburg, 8 Johns. (N. Y.) page 29, Judge Kent divides the promises to pay debts owing by others into three classes, and says the first two are within the statute; the third is not. The third class he defines, "is when the promise to pay the debt of another arises out of some new and original consideration of benefit or harm moving between the newly contracting parties." Templeton v. Bascom, 33 Vt. 132.

Messrs. BASSETT & BASSETT, for appellee.

The plaintiff could have brought suit against Robert McKnight at any time, on the note and account, and wrote to him about it after January 1, 1888. Charles McKnight had

not received a cent in money or property to pay on the debt; he did not claim possession of, nor any lien upon, the property of Robert McKnight, and had no pecuniary interest in the property. Plaintiff did not part with any property, and defendant never from any source received anything for the promise.

In a very late case in the Court of Appeals of New York, the following rule is stated as the result of the latest decisions of the courts: "That where the primary debt subsists and was antecedently contracted, the promise to pay it is original, when it is founded on a new consideration moving to the promisor and beneficial to him, and such that the promisor thereby comes under an independent duty of payment, irrespective of the liability of the principal debtor." Rintoul v. White, 26 Cent. L. Jour. 368.

The court in that case reviewed the case of Leonard v. Vredenburg, cited by counsel for appellant, and other cases following that, and said the definition in that case "assumed as the test of an original promise, that it was founded on a new or further consideration, of benefit or harm, moving between the promisor and promisee. There was found in this some inaccuracy of expression; for since every promise must have some consideration, to be valid at common law, and that necessary and inevitable consideration, wherever the debt to be paid antecedently existed, is always 'new' and 'further' because different from that of the primary debt, and since also such consideration does frequently move between the newly contracting parties, giving benefit to promisor or harm to promisee, it became apparent that the terms of the definition were dangerously broad and capable of a grave misapprehension, making it almost possible to say that a promise good at common law between the new parties, was good, also, in spite of the statute."

This broad definition was named in the case of Mallory v. Gillett, 21 N. Y. 412, which was an exhaustive case, and recited a great number of American and English cases, commencing with the case of Leonard v. Vredenburg.

In the case of Mallory v. Gillett, after citing a long list of

cases, it is said on page 427: "They all present examples where the collateral undertaking was founded on a consideration sufficient to sustain the promise, but of no personal concern to the promisor, yet the promises were void because they fall within the precise terms and the undoubted policy of the statute of frauds." Brown v. Webber, 38 N. Y. 187; Ackley v. Parmenter, 98 N. Y. 425; Nelson v. Boynton, 3 Met. 396; Furbush v. Goodnow, 98 Mass. 296.

To the same effect is Birchell v. Neaster, 36 Ohio State, 331. The decisions in our own Supreme Court sustain the rule first laid down in all of its terms, and is as strict as any of the courts of other States. We cite enough to show its uniform ruling: Scott v. Thomas, 1 Scam. 58; Hight v. Wells, 17 Ill. 88; Eddy v. Roberts, 17 Ill. 505; Chilcote v. Kile, 47 Ill. 88; Wilson v. Bevins, 58 Ill. 234; Durant v. Rogers, 71 Ill. 121; Owens v. Stevens, 78 Ill. 463; Hardman v. Bradley, 85 Ill. 162; Denton v. Jackson, 106 Ill. 433; Power v. Rankin, 114 Ill. 55.

UPTON, J. In June, 1887, Robert McKnight was indebted to Dennis Murto for about $225 on a promissory note and book account. About that time McKnight went to Wichita, Kansas, to do some work, of which Murto was apprised. McKnight had in Keithsburg, Illinois (where all the parties in interest in this suit then resided), property, real and personal, sufficient to meet his indebtedness.

In August, 1887, McKnight remaining in Kansas, and Murto learning that the family and some personal effects of McKnight's were about to be removed thereto, saw Charles McKnight, a son of Robert, and had the following interview with him:

"I saw Charles McKnight and asked him if the folks were going to move to Wichita, and asked him how soon, and I think he said in a couple of weeks, possibly three. I asked him if his father was coming back, and he said that he had a good thing out there, or too good a thing to come back, and said they were going to ship his father's things out there. I asked him then how it would be about that note I held against his father, and he asked me how much it was, and I told him, and he said he would see me again about it. I am not positive

whether it was that day or the day following, or it may be two or three days, but it was immediately after this talk that he came into the store and asked me again about it. I told him the note was past due. He asked me what the amount was, and I told him over $200, and that there was also a small book account, and I told him I did not want to lose it. He asked me what I proposed to do about it, and I told him I proposed to take steps to collect it. I said to him, your father is worth property and I am going to get 'out an attachment. He went out of the store and came back in a few minutes and said: 'Don't do anything about that, and I will pay it; now, don't you do anything about it.' I said to him, you had better take the note and give me your obligation for it, and he replied that he did not want to do that, and said: 'Damn it, did I ever tell you I would do anything that I did not do?' He said: 'If I say I will pay it, I will pay it.' I then asked him to let me know when he would pay it, and he said, at the close of the year, when we close our accounts. That is the conversation, as nearly as I can tell it. I turned to my book-keeper and told him that it was all right, that Charles McKnight had assumed it. I was in my office at the time, that is, at the time of this last conversation, and Charles McKnight was leaning over the rail talking about it;" which was the material evidence offered in the case of the agreement, set out in plaintiff's declaration.

Murto did not attach the personal goods of Robert McKnight, and the same were about two weeks thereafter shipped to Kansas and the real estate in Keithsburg mortgaged for $1,885. What the value of this realty was, does not appear.

In December, 1887, Murto had an accounting and settlement with Charles McKnight, of his individual accounts, at which time he refused to pay the debt of his father, saying his father would pay that, and denying that he had ever agreed to pay it. No account or charge was made against Charles McKnight of the indebtedness from his father to Murto, on book or otherwise, and the promissory note of Robert McKnight was held by Murto as a subsisting claim

against him.    There was no contract or agreement, or memorandum thereof in writing, between the parties concerning the indebtedness or the payment thereof.

This suit was commenced in the Circuit Court of Mercer County, February 7, 1888, against Charles McKnight by attachment. The declaration is in assumpsit and contains a special count, the common counts and general breach.

The special count alleges that on the "first October, 1887, Robert McKnight was indebted to Dennis Murto in the sum of $250, according to the terms of a certain promissory note for $195 with interest at eight per cent. from date, and $50 on account for goods, wares and merchandise, before that time sold and delivered to said Robert McKnight at his request; and being so indebted, the said Robert McKnight was attempting to dispose of his real estate with the intention of leaving the said State and with the intention of removing his personal effects from the said State, and in consequence thereof the said plaintiff was about to sue out, procure and levy an attachment on the property of the said Robert McKnight according to the form of the statute, and the said plaintiff could then, by so doing, have made the amount of his said demand, to wit, the sum of $300, from the property of Robert McKnight; and thereupon the said defendant herein, who is a son of said Robert McKnight and who had learned of the intention of the plaintiff, came to him (plaintiff), and offered, if he would allow the said Robert McKnight to depart from the State, take his personal estate with him and sell his real estate, without plaintiff suing out and levying an attachment on any of said property, he, the said defendant, would assume and pay the said indebtedness and be personally responsible therefor; and the said plaintiff accepted said offer, whereupon the defendant assumed and agreed to pay said indebtedness, to-wit, the sum of $300; since which time the said Robert McKnight has disposed of all his real estate in the State, and has departed from the State, taking with him all his personal effects, said plaintiff having allowed him, said Robert McKnight, so to do, relying upon the promise of the said defendant."

Murto v. McKnight.

There is no evidence in the record that Murto had or intended to take an attachment against the property of Robert McKnight either before or after the alleged promise of Charles McKnight.   Plea of the general issue, under which, by agreement, all matters material were to be heard as if specially pleaded, and under which the statute of frauds was insisted upon as a defense.

The cause was heard by a jury and after the evidence closed on the part of the plaintiff and without offering any evidence on the part of defendant on this branch of the case, the court, on motion of defendant's counsel, excluded all the evidence offered on the part of the plaintiff's claim against the defendant, as set out in the declaration, and instructed the jury to find a verdict for the defendant, which was done, and plaintiff excepted; and, judgment being entered, and a motion for a new trial being overruled, the cause was appealed to this court, and the errors assigned are:

1st.   The exclusion of the plaintiff's evidence from the jury.

2d.   Instructing the jury to find a verdict for defendant.

3d.   In refusing a new trial and rendering judgment on the verdict.

It is apparent that the court below held that the statute of frauds and perjuries, so called, applied to the case as made, and for that reason ruled out the evidence of the plaintiff and instructed the jury to find a verdict for the defendant.

If the statute and its provisions do apply, manifestly the court ruled correctly.   This statute of frauds and perjuries, which is a substantial copy of the English statute, is believed to be in force in all the States of the Union, varied somewhat in expression, perhaps, but the same in substance and effect, and has been the subject of varied and contradictory construction.

The difficulty has not arisen from a want of perfect understanding of the terms used in the statute—for they are as accurate as human wisdom can make them—but rather, it is believed, in the favor or disfavor with which the different judges have regarded this statute in its practical operation. Those who have regarded it as establishing a hard rule in par-

ticular cases, have given it a narrow and illiberal construction. Indeed in some cases it will be found it has been so construed as to have no practical meaning whatever. On the contrary, those judges who have regarded the statute as establishing a sound rule of public policy in the transactions of life have always given it a true and just interpretation according to the exact meaning of the words used. The latter we regard as the safe and better rule. It conduces far more to a uniform administration of the law, as the Supreme Court of our State have long since determined. The general rule is that if the promise is in the nature of an original undertaking to pay a debt to a third party, and is founded on a valuable consideration received by the promisor himself, it is not within the provisions of the statute and need not be in writing to make it valid and binding. It will be regarded in the light of a contract for the benefit of a third party upon which such third party may found an action for the breach. Wilson v. Bevans, 58 Ill. 232; Eddy v. Roberts, 17 Ill. 505.

If, however, another is pecuniarily liable, or is the principal debtor, and the relations of debtor and creditor remain unchanged, both as to the right and the remedy, and no trust is created by the transaction out of which the promise arises, such promise is in its nature collateral and not original. If the debt is to be paid, or the duty performed, by him who is pecuniarily liable, the incident or collateral promise is of no force for any purpose; there is nothing remaining on which it can operate.

Tested by these rules the contract alleged in the special count of the plaintiff's declaration is void if not in writing. The debt of Robert McKnight in fact and form existed at the time of the making of the alleged promise. Robert McKnight continued and still continues liable to the same extent as if the promise had not been made. The relations of debtor and creditor were in no manner changed. No remedy, pledge or security was relinquished, and no trust devolved upon the defendant to execute by reason of the transaction. Eddy v. Roberts, 17 Ill. 505, and cases cited.

It is claimed by appellant's counsel that the facts in the

case at bar brings it within the rule above stated for the alleged reason that by relying upon the defendant's promise he forebore to enforce the payment of his claim by suit until Robert McKnight's personal effects were removed from the State.

Suppose we concede for the argument's sake, but for no other purpose, that to be so, there is no fact in evidence in this record that Robert McKnight has not now, or at the commencement of this suit had not, sufficient estate in the county of Mercer out of which to make plaintiff's demand. True, that is averred in the declaration, but the record is barren of proof on that point; and even if proven, it would only go to the consideration, and could not supply the written contract or memorandum thereof, without which the consideration could not avail. But more than this, the contract, as set out in the declaration, though not supported by the proof, did not in the least prevent the plaintiff from proceeding and enforcing any remedy against the property of Robert McKnight, he had before the claimed promise was made. No remedy, pledge or security whatever was relinquished by Murto.

But it is urged that the case of Bunting v. Darbyshire, 75 Ill. 408, is decisive of this case in the plaintiff's favor. We think that case is not even in kinship with the case at bar. The instruction given to the jury in that case, among others was, "that if they further find from the evidence that at the time of the promise or agreement to pay said plaintiff, an execution was in the hands of the sheriff to collect said judgment, that the said defendant knew of the same and at the time had property in his possession belonging to Ebenezer Bunting, (principal debtor in the execution,) subject to said execution, and that the promise was made to prevent the levy of the said execution upon said property, and, in consideration thereof, the plaintiff did prevent the levy by agreeing to pay, and paying the judgment, they will find for the plaintiff."

That instruction brought the case strictly within the rule stated in the case cited in the 17th Illinois, *supra*, and the cases there referred to. In the case of Bunting v. Darbyshire, *supra*, the promisor retained the goods of the principal

debtor, subject to the execution, and which should have been applied in satisfaction thereof, to the relief of the surety, (the co-defendant in execution,) and upon that consideration authorized the surety to settle the judgment, and for the property thus received of him, he would repay the surety the money expended in such settlement. That was an original and in no sense a collateral undertaking, and has never been understood by the bar or the bench as modifying the rule, as stated in the 17th Illinois, *supra*, in the least degree. It is in fact and essence within the rule first stated above as the general rule of distinction of original from collateral undertakings. Power v. Rankin, 114 Ill. 52, and cases cited. We have carefully examined the record in this case, and we think the court below was justified in holding that it was within the statute of frauds and perjuries, for the reason that the alleged contract was not in writing. There was, in the case at bar, no novation of the debt, and we think the stipulation in regard to special pleas was properly allowed by the court in the exercise of its directing power, and was broad enough to admit of the defense of the statute as claimed, even if the statute could not be, by the nature of a demurrer to the evidence. We find no error in this record of proceedings in the court below and the judgment is affirmed.

*Judgment affirmed.*