WILLIAM WATERMAN

v.

O. A. RESSETER.

*Statute of Frauds—Promise to Pay Debt of Another—Principal and Surety.*

If an act promised to be done is, in its consequences, to operate as a discharge of a debt of another, the circuity of the process by which that object is proposed to be effected does not vary the rule that the promise, not to be within the statute of frauds, must be in writing.

A guaranty of an indemnity to a surety is within the statute of frauds.

A consideration that will take a case out of the statute of frauds must be such a consideration as will make the collateral debt, agreed to be paid, the debt of the promisor.   It must be an original undertaking.

[Opinion filed August 3, 1892.]

APPEAL from the Circuit Court of Lee County; the Hon. JOHN D. CRABTREE, Judge, presiding.

Messrs. O'BRIEN & O'BRIEN, for appellant.

The alleged promise to get a chattel mortgage upon Ole Severson's property was without consideration.

The alleged promise to obtain a mortgage from Severson was a promise to answer for the debt or default of another, and not being in writing, was within the statute of frauds and perjuries, and void.   Scott v. Thomas, 1 Scam. 59; 1

Smith's Lead. Cas., 536–537 (9th Am. Ed.); Browne on Stat.
Frauds, Sec. 134, 152; Kingsley v. Balcome, 4 Barb. 131; 8
Am. and Eng. Encyclopedia of Law, 679; Carville v. Crane,
5 Hill (N. Y.), 484; S. C. 40 Am. Dec. 364, followed in Dee
v. Downs, 54 Iowa, 589; May v. Williams, 91 Miss. 125; S.
C., 48 Am. Rep. 80.

Contracts of indemnity to a surety are within the statute.
Brand v. Whelan, 18 Ill. App. 190.

On the principle that a pleading is to be taken most
strongly against the pleader, the promise set forth in the
original and first amended special counts must be taken to
have been by parol, and the counts were therefore subject
to special demurrer. Mager et al. v. Hutchinson, 2 Gilm.
269.

The objection that the contract sued upon is an agree-
ment that should be in writing, because it is a promise to
pay the debt of another, may be presented by an exception
to the ruling of the court in admitting or excluding
evidence, or giving or refusing to give instructions, or by a
demurrer. Hawley v. Dawson, 16 Oregon, 344.

There was no new, original or independent consideration
to support Waterman's promise, and take it out of the
statute of frauds. Fieldman on Com. Paper, Sec. 164; Eddy
v. Roberts, 17 Ill. 505; Murto v. McKnight, 28 Ill. App. 238;
Stewart v. Jerome, 71 Mich. 201; Townsend v. Lang, 77
Pa. St. 143; Graham v. Mason, 17 Ill. App. 399; Home
Natl. Bank v. Waterman, 30 Ill. App. 549; Clapp v. Webb,
52 Wis. 642; note to Packer v. Benton, 95 Am. Dec. 250;
note to Lookout Mountain R. R. Co. v. Houston, 2 S. W.
Rep. 37; note to Clay v. Tyson, 26 N. W. Rep. 242.

Proof of the alleged promise is inadmissible under the
rule forbidding parol evidence to vary or contradict a writ-
ten contract. Brandt on S. & G., Sec. 226; First Natl. Bank
v. Whitman, 66 Ill. 338; Harris v. Galbraith, 43 Ill. 309; Lane
v. Sharpe, 3 Scam. 572; Penny v. Graves, 12 Ill. 287; Har-
low v. Boswell, 15 Ill. 56; Foy v. Blackstone, 31 Ill. 538;
Hypes v. Griffin, 89 Ill. 136; 2 Suth. on Dam., p. 146, and
cases cited; Randolph on Com. Paper, Secs. 782, 783; Foster
v. Clifford, 44 Wis. 570; Gilbert v. Ballou, Jr., 29 Vt. 296.

Waterman v. Resseter.

The agreement as claimed amounted to an agreement to indemnity against a loss or damage, not liability, and if otherwise good, no cause of action would accrue under it, until appellee actually paid the judgment.    Gilbert v. Wyman, 1 Comstock, 550; S. C., 49 Am. Dec. 359, and note.

Messrs. DIXON & BETHEA, for appellee.

The contract was not within the statute of frauds.    It was not a promise to pay the debt of another.    Browne on Statute of Frauds, Sec. 177; Brandt on Suretyship, Sec. 60; Bushell v. Beavan, 1 Bing. (N. C.) 103; Jarmain v. Algar, 2 C. & P. 249; Towne v. Grover, 9 Pick. 305; Marion v. Faxon, 20 Conn. 486; Williams v. Leper, 3 Burr. 1886; Bank v. Chalmers, 24 N. E. Rep. (N. Y.) 848; 1 Reed on Stat. of Frauds, Sec. 34; Throop's Verbal · Agreements, Sec. 114; Tighe v. Morrison, 22 N. E. Rep. (N. Y.) 165; 3 Parsons, Cont., 22; Smith's L. C., Vol. 1, Pt. 1, 536.

It is not an attempt to vary a written contract by parol evidence; it is an attempt to enforce an independent contract.    Waterhouse v. Kendall, 11 Cush. 128; Stacey v. Kemp, 97 Mass. 166; Hodgkins v. Moulton, 100 Mass. 311; Brandt on Suretyship, Sec. 352; Kulenkamp v. Groff (Mich.), 40 N. W. Rep. 59.

There was a consideration for the promise of Waterman to get the mortgage.    It was the signing of the new note by Resseter.    That was a good consideration.    Buchanan v. International Bank, 78 Ill. 500; Burch v. Hubbard, 48 Ill. 164; Anderson's Law Dictionary, 231; Brandt on Suretyship, Sec. 213; Carroll v. Nixon, 4 W. & S. (Pa.) 517; Carman v. Noble, 9 Penna. St. 366; Home Nat. Bank v. Waterman, 25 N. E. R. 648.

The instructions for appellee were properly given.    Upstone v. People, 109 Ill. 169; Sacket on Instructions (2d Ed.), 25; Latham v. Roach, 72 Ill. 182.

It was proper to cross-examine Ole Severson on question as to whether he had promised Resseter to give him a mortgage.

The case should be affirmed because the evidence sustains the proposition that Waterman promised Resseter to obtain a mortgage on Severson's property, and he failed to do so, and the failure was a damage to the appellee to the amount of the judgment.

It was proper to prove payment after the beginning of the suit. 1 Sutherland on Damages, 190; 2 Sutherland on Damages, 602-3, note 2; Osgood v. Osgood, 39 N. H. 209; Sedgwick on Meas. Dam., 378; Brandt on Surety, Sec. 191.

MR. JUSTICE LACEY. The appellee sued the appellant in an action of assumpsit in the Circuit Court on a cause of action set up in the declaration in substance, that appellant, in consideration that appellee would, as surety, sign, execute. and deliver to appellant a promissory note of $250 theretofore made by Ole and John Severson to appellant, dated February 15, 1889, and due in one year, agreed with appellee to forthwith take from Ole Severson a chattel mortgage on the latter's personal property, sufficient in value to secure the payment of the same note, and also one of like amount given by the same parties, Ole and John Severson and appellee, to appellant, dated November 15, 1888, and due in one year.

It was averred in the declaration that Ole Severson had, at the time covered by the agreement, sufficient personal property unincumbered to secure the payment of both the notes, and was ready and willing to give the mortgage; and further averred that appellant promised to indemnify and save harmless the appellee as surety; and appellee, confiding in the promises, executed as surety and delivered to appellant the $250 note dated February 15, 1889, which appellant afterward, and before its maturity, assigned, together with the $250 note dated November 15, 1888, also before its maturity; and that Ole and John Severson were insolvent, and appellee solvent, and legally bound to pay both notes; that appellant did not, nor would, take a chattel mortgage from Ole, and did not, nor would, indemnify the appellee as promised, and appellee, relying on such promises, did not

secure his debt from the Seversons, etc. The declaration further avers that judgments were rendered against appellee on the notes in question May 1, 1891, for the amount of both notes in favor of the assignee and owner, Ella W. Waterman, etc.

The appellant pleaded the general issue and the statute of frauds and perjuries; that the promise sued on was not in writing and was the promise to pay the debt of another. The case was tried by a jury, which found a verdict for the appellee for $583, the amount of the principal and interest on the notes on which he was security. Judgment was rendered on the verdict, and appeal is taken by appellant to this court.

It appears from the evidence that the original note given by appellee as security of the Seversons, was for $500 in 1887, and one-half of it was renewed in 1888, and the other half in 1889, and the last one was given and renewed February 15, 1889, due in one year, and that on the occasion of the giving of this last one the claimed promise in question was made.

We think the preponderance of the evidence fairly sustains the verdict as to the essential points relied on by appellee for recovery as set forth in the declaration, to wit, the giving of the renewed note in question, and in consideration of its execution, the agreement on the part of the appellant to procure a chattel mortgage from Ole Severson in amount sufficient to secure and indemnify the appellee to the extent of the two notes; that Ole Severson had property abundantly sufficient to secure the notes and all other claims against him by appellant and other secured claims on it; that appellant failed to secure the notes as he had agreed; that the principals had become insolvent and appellee could not make anything out of them, and that he, since this suit was commenced and before trial, had paid off said notes to the assignee of appellant, their full amount and interest amounting to the verdict.

It is true appellant testified, and was supported by James C. McConaughty, that he extended the time of the

payment of the note at appellee's request, and for his accommodation, and only promised to try to get a mortgage; but his testimony is contradicted by appellee and at least three other reputable witnesses who were present and who testified that appellee refused to sign a renewal note till appellant absolutely promised him to procure the mortgage from Ole Severson, and we think the jury were justified in the verdict so far as the facts are concerned.

The main question presented by this record is, whether the promise sued on is within the statute of frauds as being a promise to pay the debt of another, and in case it is not within the statute, whether there was any consideration for the promise to procure a chattel mortgage from Ole Severson for appellee's benefit, as charged in the declaration.

These questions of law were properly raised in the court below and decided by the trial court adversely to appellant. The same questions are raised here in argument by counsel for appellant, and many authorities cited to show that the case falls within the statute of frauds, and many of them apparently in his favor. There seems not to be entire harmony in the decisions, yet upon careful examination of the authorities, they do not seem to be as irreconcilable as would seem upon a less critical examination. The contract sued on here may be reviewed in two different respects: First, as a promise on the part of appellant as a guaranty to appellee that he would himself pay, in behalf of the principal, a portion of the notes signed by the latter as surety, payable to the former, equal to the value of the personal property of Ole Severson, after appellant's and other secured debts were paid, be that the entire value of the notes or less; and second, in substance a guaranty by the same party of immunity to appellee against his liability as surety for Seversons on the notes to the same extent. Whatever other courts may have decided as to the nature of similar agreements, as to whether they are to be regarded as a promise to pay the debt, or in the nature of agreements to answer for the default or miscarriage of another party, our own Supreme Court has held them to be in substance

promises and agreements of that nature.   Scott v. Thomas, 1 Scam. 59, was a case where Thomas, holding a note on two parties, of which Scott was not a party, received a verbal agreement from Scott that if Thomas would not sue said note and forbear its collection, and if the makers did not pay it by the next term of court, he, Scott, would fore-close a mortgage which he held from the makers of the note, upon a tract of land, and that Thomas might buy it in at $1.25 per acre, if it would not sell for more; and after paying his own debt, pay the surplus, if any, to Scott; and Thomas forbearing, Scott failed to perform his agreement. Hence suit was brought on the contract.   The statute of frauds was pleaded by Scott, and recovery was had and the case appealed to the Supreme Court.   The court held that the case came within the statute.   The court says, in passing on the case :   " A distinction was attempted to be drawn between a promise to pay the debt of another and a promise to do some collateral act by which such payment might be obtained.   No such distinction, however, is recognized by any of the cases relied on, nor does any such exist.   If the act promised to be done is in its consequences to operate as a discharge of a debt of another, the circuity of the process by which that object is proposed to be effected does not vary the principle of the case."   The court held the agreement was clearly within the statute of frauds and per-juries.   It further says :   " The distinction in relation to promises under that branch of the statute applicable to the case is, that where the moving consideration of the promise is the liability of a third person, there the promise must be in writing; but if there is a new consideration moving from the promisee to the promisor, as where he gives up some lien or security, there the superadded consideration makes it a new agreement, for the performance of which no third person is liable, and consequently is not within the statute."   This case was quoted with approval in Power v. Rankin, 114 Ill. 52, where the latter principle was re-announced and applied.   We have no intimation in any case decided in our Supreme Court where the principle

announced in Scott v. Thomas, *supra*, has been overruled or modified, and we are obliged to take it as the stated law of this State.

We can not see how the statute of frauds, if it is to have a reasonable and fair interpretation, can be otherwise interpreted in respect to the point in question. The case of Bushell v. Beavan, 1 Bing. (N. C.) 103, is cited by appellee to show a stricter rule, as held by the court of English Common Pleas in the construction of the statute of frauds in regard to the point in question, than held in this State. The facts are so dissimilar that we can hardly regard the case in conflict in principle or in point. We have not a full statement of the case before us, but from what is gathered from the remarks of the court, we are informed that the defendant undertook that " M. " should guarantee to plaintiff a certain freight bill due him under charter party from " L. " This promise was made without " L. " ever engaging " M. " to sign it nor had " M. " agreed to give it. Therefore there was no default for which the defendant made himself liable, but he rendered himself so on his own immediate contract, as we suppose, upon a consideration passing between himself and plaintiff. The court says : " There was therefore no default of any one for which the defendant made himself liable." The case of Jarmain v. Algar, 2 C. & P. 249, was to the same effect. The case did not come within the statute because the person for whom the defendant agreed to act as guarantor, was not himself liable. Therefore the defendant's undertaking was held to be original and not collateral to any principal, for there was none. The case of Bushell v. Beavan, *supra*, was disapproved in Carville v. Crane, 5 Hill, 483. The case of Towne v. Grover, 9 Pick. 305, held that where a party building a house and agreeing verbally with the plaintiff to let him know before he settled with the builder, and he failed to keep his promise, that the case did not come within the statute of frauds; that it was an independent agreement; appellee cites in the same line, Tighe v. Morrison (N. Y.), 22 N. E. Rep. 164. There the defendant asked the plaintiff to sign an administrator's

bond and stated to him orally that he would guarantee him against loss. The defendant was administrator as well as another person. The plaintiff was requested to pay the bond on the default of the other co-administrator, one Dowdall, in failing to pay over to the creditors of the estate the money due them. The court held that this was an original undertaking on the part of defendant, who was sued on his guaranty. The court admits, in its opinion, that the question was a doubtful one and that the decisions upon it were at variance, but think the weight of the authority is in favor of its decision. The decision is put upon the ground that Dowdall, at the time that the bond was signed, was under no legal obligation to the plaintiff until "by his default he had compelled him to pay the bond, and then his liability arose, not out of any promise on his part, but sprang from operation of law from the fact of payment only." The court further holds there must be a liability at the time the collateral agreement is entered into, else there is nothing to which the agreement can be collateral. With due respect to the court deciding that case, we are compelled to observe that we are unable to see the force of the logic which leads to the result attained. The defendant in that case undertook, in substance, to stand good for the debt, default or miscarriage of Dowdall in any of his duties, one of which was the payment of the money coming to his hands by virtue of his office as administrator, to the parties entitled thereto. At the same time the plaintiff had, by signing the bond, guaranteed that he would do that. Dowdall did not become the debtor of the plaintiff simply and only by the fact that the plaintiff had paid the bond. It was his default, and the fact of payment and terms of the bond that made the plaintiff liable, and the implied promise of Dowdall to recompense the plaintiff in case he was damnified on account of the former's act. We do not understand that when the statute of frauds uses the words, default of another, it means defaults already occurred, but any default that may take place in the future. Especially where the foundation is laid, and it is in contemplation that

there may be a default for which the security is liable under a contract like the one in that case. Otherwise any one might be held on any official or administrator's bond under a verbal agreement, where he simply contracts to stand bail for further performance of the obligation of the principal therein.

It is, however, we think, settled in this State that a guaranty of an indemnity to a surety is within the statute of frauds. It is in fact and in substance an agreement by a third party with the security of such third party that he will pay the debt for which the security is liable, that is, the principal debt, and thereby release the security. Such was held to be the law in the case of Brand v. Whelan, 18 Ill. App. 186, in which it is said that " it has been the subject of very great and perplexing discussions, both in this country and in England, and very different conclusions have been reached by different courts. But the weight of the American decisions, at least, seems to be in favor of applying the statute of frauds to contracts of this character." Citing 1 Reed on Statute of Frauds, Sec. 144. See also 1 Smith's Leading Cases, 411; May v. Williams, 61 Miss. 125; Ferrel v. Maxwell, 28 Ohio St. 383; Bissig v. Britton, 59 Mo. 204; Dow v. Swett, 134 Mass. 140. Therefore the case of Tighe v. Morrison, *supra*, can not be regarded as authority in a case like the one at bar, where a surety is guaranteed against his contract of indemnity. The implied obligation to him on the part of the maker of the note or obligation to pay him in case he is compelled to pay the debt by virtue of his guaranty, is regarded as a sufficient direct debt on the part of the maker of the obligation to come within the provisions of the statute of frauds. It is contended, however, by the appellant, that there was a new consideration moving between the appellee and the appellant to take the case out of the statute of frauds. It is insisted, because appellant signed a new note and extended the time of payment one year, he therefore relinquished a right which he had to pay off the note which was renewed and proceed against the principal maker of the note, Ole Severson; that

it was a promise for a promise, etc.   And that it was an advantage also to the appellant because he could get interest on his money for another year, and because, as it is claimed, he would be enabled to procure security from Severson for an unsecured claim of about $80.   It is not insisted here by plaintiff's attorney that appellant released any liens upon any property of Severson's.   We do not think that any new consideration was shown by the evidence in this case, admitting everything proven which the evidence tends to show, that would take the case out of the statute of frauds.   It is not every consideration that will take the case out of the statute of frauds, but it must be such a consideration as will make the collateral debt agreed to be paid, the debt of the promisor.   It must be an original undertaking.   As it is said in Eddy v. Roberts, 17 Ill. 505, "A consideration is necessary to support all promises, for without such consideration no action can be maintained upon them, whether in writing or not;   *   *   *   the statute does not change the common law in this respect, but adds the requisition that the promise be in writing.   Where the principal and the collateral contracts are made at the same time, the credit given to a consideration passing between the principal parties may be sufficient to sustain the collateral promise, but such promise must be in writing.   In some of the cases it is said that the promise is an original one and therefore not within the statute, where the promise arises out of some new and independent consideration moving between the newly contracting parties. This general language seems to me to overlook an essential requisite to a valid promise or contract—a consideration —and to strip the statute of that protection it was intended to afford in the prevention of wrongs to third persons, by the setting up of fictitious contracts and maintaining them by perjury.   A close examination, however, of the cases where similar language occurs, will disclose that many, if not most of them, were where the creditor had a subsisting lien or security for the debt which was given up for the benefit of the defendant, where the creditor dis-

charged the original debt, where by some transaction of the debtor a trust was created to be executed by the defendant in favor of the plaintiff, or where the promise was made to the debtor for the payment of his debt to the plaintiff." It is further laid down as a general rule by the very able Judge Skinner who wrote the opinion, that "if another is primary, or principal debtor, and relations of debtor and creditor remain unchanged both as to the right and to the remedy, and no trust is created by the transaction out of which the promise arises, such promise is in its nature collateral and not original. If the debt be paid or duty performed by him who was primarily liable, the incident or collateral promise is of no force for any purpose; there is nothing remaining on which it can operate."

If we test the case by the rules above laid down by our Supreme Court and which have never been changed by any subsequent opinion, we think the appellant entirely fails to establish any new consideration. By his signing the renewal notes it was just the same as though no former note had been given. It was still a subsidiary contract, collateral to and dependent upon the debtor's liability of another, to wit, Severson's. The same arguments could be advanced to show a new and independent consideration sufficient to take the case out of the statute of frauds, if the note in question had been signed for the first time, for it could have been said with more force that appellant would not have signed the note at all if appellee had not agreed to indemnify him out of the property of Severson, whereas, as it was, he was already liable on the original note, and only signed the new note and gave up his right to immediate payment. As to the agreement for the extension of time, whereby appellee might secure the interest on his money for another year, that contract must be referred to the original debtor, who alone received the money and made the principal agreement with appellee to keep the money another year. The only connection appellant could have with it was to guarantee the

payment at the end of the year.   His was a collateral promise only.   As to the claim, that appellant secured an opportunity by the extension to get an unsecured claim secured, that was no part of the consideration for the extension or renewal of the note.   It was not so expressed or so understood between appellant and appellee; and even if it had been, it was a mere incident to the principal transaction, and could not avail appellant.   We also cite Hite v. Lewis, 17 Ill. 88; Murto v. McKnight, 28 Ill. App. 238.   The case of Powers v. Rankin, 114 Ill. 52, cited by appellant, simply carries out the principles in the above cases cited from our Supreme Court, and in no wise conflicts with them.   That was a case where security, in the nature of a chattel mortgage, was given up, and Powers in consideration thereof agreed to pay the debt and took the property.   That case, however, is opposed to the very able opinion in Corkins v. Collins, 16 Mich. 478.   We find no case reported in the Illinois reports, or any other reports, that comes anywhere near supporting an oral promise to pay the debt of another on an original consideration like the one claimed here.   We cite further the case of the Home National Bank v. Waterman, 30 Ill. App. 549.   Affirmed in 134 Ill. 461.   There is no evidence in the record that appellee required appellant to refrain from taking a chattel mortgage from Severson for himself. He could have done so at any time had he seen proper. He was under no contract not to do so.   At best it was a mere prospective benefit which he might or might not attain.   Having determined that the promise sued on in this case is within the statute of frauds and void, it follows that the court below erred in not sustaining appellant's motion to exclude the evidence from the jury, and to render judgment against appellee for costs.   The judgment of the court below is therefore reversed.

*Judgment reversed.*

Judge Cartwright took no part in the decision of this case.