## Farmers' and Mechanics' Bank et al. v. Spear.

49  509
156s 555

1. *Creditor's Bill—Judgment by Confession—Rights of Creditors.*—S. having become surety on a promissory note for T. & McL., and having guaranteed the payment of accounts due by them to different persons, for the purpose of indemnifying himself for what he might have to pay, took a judgment note from them and caused judgment to be entered upon it. Upon this judgment an execution was issued, which, being returned in part unsatisfied, he filed a creditor's bill. Upon the question being raised as to whether the judgment was such as would enable him to maintain his bill, *it was held* that it was not fraudulent, simply because he did not pay the debts for which he was surety until after his judgment was entered, and as defendants in the creditor's bill had not been misled, injured or deferred in any way on account of it, the bill would lie.

2. *Statute of Frauds—Promise to Pay the Debt of a Third Person.*—S. signed a promissory note payable to F. & M. Bank as surety for T. & McL., afterward entering into a verbal agreement with the bank that it should pay him one-half of any loss he might sustain through

failure of T. & McL. to pay said note and certain other debts for which he was surety for them. *It was held* that the agreement was within the statute of frauds and void.

3. *Statute of Frauds—Special Promise to Answer for the Miscarriage of a Third Person—Consideration.*—A consideration for a promise to answer for the miscarriage of a third person, does not obviate the necessity of a writing, or make a promise original which is in its nature collateral.

4. *Insolvency—Unlawful Preferences—Judgment Notes and Attorney's Fees.*—The J. V. F. Co. had two notes of T. & McL., which provided for reasonable attorney's fees if not paid when due, and knowing the said T. & McL. to be insolvent, it voluntarily surrendered said notes, taking from them a new judgment note in lieu thereof, which provided for an attorney fee of $250. *It was held* that the provision for the attorney fees constituted an unlawful preference.

**Memorandum.**—Creditor's bill. Appeal from a decree rendered by the Circuit Court of Knox County; the Hon. ARTHUR A. SMITH, Circuit Judge, presiding. Heard in this court at the May term, 1893. Opinion filed December 12, 1893.

The statement of facts is contained in the opinion of the court.

APPELLANTS' BRIEF, GEO. W. THOMPSON AND FORREST F. COOKE, ATTORNEYS.

A judgment by confession must be founded upon a preexisting indebtedness *bona fide* due, and a judgment simply founded on a possible contingent liability is a fraud and must be treated as a nullity. Sprague v. Noble, 3 Brad. 522.

It is only for a debt *bona fide* due, that a person may confess judgment. Hulse v. Mershon, 125 Ill. 52.

The statute of frauds is a perfect defense to the suit, as far as the F. & M. Bank is concerned. Statute Ill., Chap. 59, title, Frauds and Perjuries, Sec. 1; 1 Brandt on Suretyship (2d Ed.) Secs. 59, 61, 74, 76; Murto v. McKnight, 28 Ill. App. 238; Eddy v. Roberts, 17 Ill. 505; Hardman v. Bradley, 85 Ill. 162; Tileston v. Nettleton, 6 Pick. 509; First Nat. Bank v. Bennett, 33 Mich. 520.

The president of a bank has no authority to make the agreement claimed. It is not within the powers of a bank or its president and therefore a nullity. First Nat. Bank v. Bennett, 33 Mich. 520; Morse on Banking, 134; Wyman v.

Hallowell Bank, 14 Mass. 61; Salem Bank v. Gloucester Bank, 17 Mass. 29; Bank v. Dunn, 6 Pet. 59.

Appellee's Brief, Edgar A. Bancroft and E. P. Williams, Attorneys.

The contract between the bank and Spear was not a collateral, but an independent contract, founded upon a new and independent consideration, passing from Spear to the bank, to wit, the mutual promise of Spear to the bank, and of the bank to Spear, to act together and for mutual benefit, and share equally the gain and risk of all loss consequent thereon. The promise of each to the other, was a sufficient consideration for the promise of the other. "A promise for a promise is a good consideration everywhere." Funk v. Hough, 29 Ill. 145.

The promise of the one is the consideration for the promise of the other. Bishop on Contracts (enlarged edition), 76.

*a.* The main question for inquiry, under the statute, is whether the promise is an original and independent one, or subsidiary, collateral to and depending upon the debt or liability of another.

*b.* In this case the undertaking is not collateral, but is rightly counted on as an original undertaking of the defendant, the F. & M. Bank itself. Clifford v. Luhring, 69 Ill. 401; 2 Parsons on Contracts, 305.

Opinion of the Court, Cartwright, J.

In this case appellee filed a bill against Farmers' & Mechanics' Bank and John V. Farwell Co., appellants, and I. P. Norton, to compel the defendants to pay to him attorney's fees included in judgment notes taken by them from Thompson & McLean, when the makers were insolvent, and afterward reduced to judgment and collected, and to enforce an alleged verbal agreement between complainant and the president of said bank, that the bank should pay complainant one-half of any loss he might sustain through failure to collect from said Thompson & McLean certain debts due from them.

The bill alleged that complainant recovered a judgment

in vacation, January 21, 1891, against Thompson & McLean, for $4,200, damages and costs, on which execution was issued the same day and returned June 15, 1891, satisfied as to $624.91, and unsatisfied as to the balance, which judgment remained in full force; that Thompson & McLean had been insolvent since January 1, 1891; that on January 19, 1891, they gave John V. Farwell Co. a judgment note for $2,473.83 and $250 attorney's fee, upon which the payee, knowing the insolvency, entered judgment, January 21, 1891, and collected the same out of the property of said insolvents; that on January 20, 1891, said insolvents gave I. P. Norton a judgment note for $220, and $25 attorney's fee, on which judgment was entered January 21, 1891, which was collected in full; that on January 21, 1891, said insolvents gave to the bank a judgment note for $2,043.67 and $102.18 attorney's fee, on which judgment was entered the same day and which was collected in full; that said Thompson & McLean, on December 1, 1890, and prior thereto, were indebted to complainant about $4,000, on account of his being surety for them with one Johnson, as Johnson, Thompson & McLean, to said bank, John V. Farwell Co., and Locke, Hulet & Co., and were also indebted to said bank on other notes on which complainant was not surety, and on which the bank had no security; that about January 17, 1891, it was agreed between complainant and the bank that nothing should be done by either toward collecting said indebtedness until Thompson & McLean should complete an inventory of stock then being made, and that they would work together in protecting their claims, and in case of loss on either of said claims, would bear it equally; that the bank disregarded it agreement, and obtained said note and judgment covering only the unsecured debt to it, and sued Johnson, Thompson & McLean and complainant on the note on which complainant was surety, then amounting to $3,671.89; that complainant had been compelled to pay Locke, Hulet & Co. $237.60 on his said liability as surety for them. and that complainant's total loss, after deducting the amount collected on execution and the profit realized by him on goods purchased at sheriff's sale, amounted to $2,400, one-half of

which the bank should pay under said agreement. The prayer of the bill was that the defendants should be decreed to pay complainant said attorney's fees and that the bank should be decreed to pay to him one-half of his said loss.

The bank in its answer denied the making of the alleged agreement, as well as the authority of any officer of the bank to make an agreement of that kind, and pleaded the statute of frauds as a defense to such alleged agreement.

The answer of John V. Farwell Co. denied any knowledge of January 19, 1891, of the insolvency of Thompson & McLean, and admitted the taking of the judgment note with attorney's fee, but averred that it was taken in renewal of previous notes, given when complainant represented the makers to be solvent which contained provisions for attorney's fees.

The court on a hearing of the cause found that the complainant was entitled to the relief prayed for, and referred the cause to the master to state the account and find the net loss of complainant because of his suretyship.

The master reported that complainant, as surety for Thompson & McLean, was compelled to pay the bank $3,500, and Locke, Hulet & Co., $237.80; that after crediting $624.71 realized on execution, $900 profit made on resale of goods, $250 attorney's fee, to be paid back by John V. Farwell Co., and $25 attorney's fee, to be paid back by Norton, the amount paid by complainant as such surety was $1,938.86, and that there was due complainant from the bank under the agreement one-half of that sum, or $969.43.

Objections and exceptions to said report were overruled, and the court decreed that John V. Farwell Co. pay complainant $250; that I. P. Norton pay $25, and that the bank pay $969.43, and that on payment of said sum by the bank it should be subrogated to the rights of complainant to the extent of one-half or the indebtedness due him from Johnson, Thompson & McLean. From this decree the Farmers' and Mechanics' Bank and John V. Farwell Co. appealed.

The evidence showed that at the time complainant took his note and entered judgment thereon, he was surety on the

note for $3,500 to the bank, and had guaranteed the account
of Locke, Hulet & Co. for $237.86, and was also on a writ-
ten guaranty to the amount of $1,000, covering part of the
indebtedness included in the judgment of John V. Farwell
Co., and that Thompson & McLean were insolvent, but he
had not then paid any of said liabilities. The judgment
note was given for the purpose of indemnifying him for
what he would have to pay, and it was taken and judgment
entered for that purpose. Before the hearing he paid the
judgment on the $3,500 note, amounting to $3,976.66, and
the account of $237.80.

The first question raised is, whether the judgment of com-
plainant was such a one as would enable him to maintain
the bill. It is argued that it was fraudulent, because he did
not pay the debts on which he was surety until after the
judgment was entered, and that it was therefore void. The
defendants were not misled, injured or defrauded in any
way on account of that fact, and we think that it would not
prevent him from maintaining the bill.

The alleged agreement by which the bank was to pay
one-half of complainant's losses as surety for Thompson &
McLean was claimed to have been made by the president of
the bank. The fact of the promise being made was
disputed, and the evidence on that question was con-
flicting; but if we assume that fact as proven, and also
that it was within his powers as president, to bind the bank
by such an agreement, the promise was within the statute
of frauds. Thompson & McLean were the primary and
principal debtors, and remained liable after the agreement
exactly as before. Their relation as debtors remained un-
changed by the agreement, and the debts were still to be
paid by them. If they should discharge the obligation,
neither of the parties to the agreement would have any-
thing to pay. The agreement was only to pay in case they
failed to do so. They are still liable to the complainant for
what he had to pay, and this is recognized by the decree in
the subrogation of the bank to the extent of one-half of the
debt of Thompson & McLean. The agreement was merely

a promise to answer to complainant for one-half of so much of Thompson & McLean's debt as they should fail to pay, and was within the statute. Eddy v. Roberts, 17 Ill. 505; Murto v. McKnight, 28 Ill. App. 238; Waterman v. Resseter, 45 Ill. App. 155.

It is contended that the contract in question was an original undertaking, entered into upon a new and valuable consideration, consisting of the mutual promises of the parties, and that therefore it was not within the statute; but the fact of a consideration for a promise, does not obviate the necessity of a writing, or make a promise original which is in its nature collateral. Eddy v. Roberts, *supra*.

In our judgment, the decree was erroneous, as far as the bank was concerned.

The John V. Farwell Co. had two notes of Thompson & McLean, upon which I. P. Norton was surety, one for $779.14, and the other for $780, which provided for reasonable attorneys' fees, if not paid when due, and these notes were surrendered, and the amounts included in the judgment note, to said company. No attorneys' fees had been earned, and there is not even any means of knowing how much reasonable attorneys' fees for collecting those notes might have been, or of separating them from the balance. The notes were voluntarily surrendered, and a judgment note was taken providing for an attorney's fee of $250, when the makers were known to be insolvent, and such provision constituted an unlawful preference. Hulse v. Mershon, 125 Ill. 52.

That part of the decree requiring the appellant, John V. Farwell Co., to pay over said sum of $250, is affirmed. The decree as against the appellant, Farmers' & Mechanics' Bank, is reversed. The cause is remanded, with directions to dismiss the bill as to said bank at complainant's cost, and to modify said decree as to costs accordingly, requiring complainant to pay the costs as to that branch of the case.

The appellant, John V. Farwell Co., and the appellee, each to pay one-half of the costs of this appeal.

Decree affirmed in part, reversed in part, and cause remanded with directions.