### EMMA MAY *v.* LOUISA WILLIAMS ET AL.

1. STATUTE OF FRAUDS. *Promise to answer for another's default.*
   An oral promise to indemnify a person for becoming surety on another's bail-bond is within the Statute of Frauds. *Green* v. *Cresswell,* 10 Ad. & E. 453, approved; *Thomas* v. *Cook,* 8 B. & C. 728, disapproved.

2. EMPLOYE'S LIEN. *Nature of proceeding. Judgment.*
   Under Code 1880, c. 52, a proceeding to enforce a laborer's lien is both *in rem* and *in personam,* general judgment being rendered against the person liable and the property seized condemned to be sold for its satisfaction.

3. EMPLOYE'S LIEN. *Jurisdiction. Amount in controversy.*
   Jurisdiction of the court, in a proceeding of this character, is determined by the amount demanded, and not by the value of the property seized. Code 1880, § 1365.

4. SAME.. *Costs. Judicial discretion.*
   Costs in such proceedings are within the discretion of the presiding judge, and should be charged to the party who ought equitably to bear them in view of all the circumstances.

5. SAME. *Affidavit. Amendment. Joint ownership.*
   A laborer's affidavit for a writ of seizure which claims an interest in a crop may be amended by adding the names of the other joint owners of the interest, who are minors, by the affiant as next friend.

APPEAL from the Circuit Court of Noxubee County.

HON. JAMES M. ARNOLD, Judge.

Louisa Williams filed her affidavit with the circuit clerk, claiming that she was entitled to a lien for her labor, and that of her minor sisters, on eight bales of cotton, four hundred and twenty bushels of corn, and some cotton seed and fodder, cultivated during the year 1882, upon land owned by Emma May, who had contracted to pay these laborers half the cotton made and one-third of the other products, and that the joint interest of herself and her three sisters, who were her natural wards, amounted in value to two hundred dollars. A writ of seizure issued and was levied upon the property except the cotton. At the return term Emma May moved to dismiss the case upon the ground that the amount in controversy was insufficient to give the court jurisdiction, and that the affidavit showed no right in the plaintiff to sue for the minors. Louisa Williams asked leave to amend the affidavit, which was granted, and the motion to dismiss was overruled. An amended affidavit was then filed by Louisa Williams in her own right, and the three minors, through her as their next friend, repeating the statements of her former oath and adding that Emma May had appropriated the cotton. A motion was made by the defendant, and overruled, to dismiss the case because the amended affidavit showed that the amount involved was insufficient to give jurisdiction, and because this affidavit made

new parties and sought to confer jurisdiction on the court by joining distinct claims.

Emma May answered that she had sustained damages by reason of the plaintiffs' failure to carry out their contract with her to such an amount as covered the value of all the products. A trial, upon the facts stated in the opinion, resulted in a verdict for the plaintiffs for one hundred and five dollars, and judgment was entered that Louisa Williams and the minors, by her as next friend, jointly should recover of Emma May this sum with interest and the cost of the proceeding, that the property seized should be sold to pay the judgment, and for any balance execution should issue. Emma May then moved the court to set aside the verdict and judgment and grant a new trial, for the reasons that the court excluded from the jury evidence of the oral agreement in reference to her right to apply the crop grown by the plaintiffs as indemnity for becoming surety on the bail-bond of Louisa Williams's husband, and that the judgment was informal, varied from the verdict, and taxed the defendant with all the costs. This motion was overruled, and Emma May appealed.

*Thos. J. O'Neill,* for the appellant.

1. Minors without a legal guardian must sue by next friend, and the first affidavit was fatally defective in this particular. The property in the appellant's hands was not worth one hundred dollars. But, including the cotton, this is a justice's court case. One-fourth of two hundred dollars—which, according to the affidavit, is the share of Louisa Williams in all the products—is not a large enough claim for suit in the circuit court. Jurisdiction in cases of this character is fixed by the amount of property in the defendant's hands. The employe's lien is a creature of the statute—a mere right to subject the thing. It is a lien which must be enforced in the manner prescribed by the statute. Code 1880, § 1363; *Westmoreland* v. *Wooten,* 51 Miss. 825; *Cloud* v. *State,* 53 Miss. 662. But the amended affidavit made a worse case than the other. Demands of four persons were thus united; three of these were infants. A combination of this character is inadmissible for the purpose of conferring jurisdiction.

2. In this statutory proceeding the provisions of the statute must be complied with. Yet we have in the record a general verdict against Emma May for a sum in gross. How was this reached ? The object of the suit is to condemn the products seized. The judgment departs from the verdict and orders the sale of the property. If the appellees were entitled to anything, it was half the cotton and one-third of the other products. Emma May had the right to return such as she chose, and for this purpose the verdict should have fixed the value of each kind of property. *Anderson* v. *Tyson*, 6 S. & M. 244; *Drane* v. *Hilzheim*, 13 S. & M. 336. In any event it was erroneous to tax the defendant with the costs, there being no certificate of the judge that, in his opinion, the plaintiff had reasonable ground to expect to recover more than one hundred and fifty dollars. This certificate the judge could not have made. But the court proceeded under § 2386 of the Code, evidently being of opinion that the imposition of costs was a mere matter of discretion in all cases, just as in the chancery court. Section 1497 was overlooked; but it applies to this case as well as to ordinary suits for the recovery of money. *Fenn* v. *Harrington*, 54 Miss. 733.

3. The verdict was unwarranted by the evidence, and the only explanation possible is that the jury were misled by the error in excluding the parol contract about the bond. An agreement to indemnify another for the contingent liability assumed in becoming surety on a bail-bond is not required to be in writing. This is an original contract, and, if verbal, is not obnoxious to the Statute of Frauds. The consideration is the act of the promisee in signing the bond, and the contract is executed when the promisor has furnished the indemnity. In the case at bar this was the production of the crop, which was to be appropriable to reimburse the appellant for any loss that she might sustain. *Sweatman* v. *Parker*, 49 Miss. 19 ; *Johnson* v. *Knapp*, 36 Iowa 616. Liability was fixed on the appellant before the crop was grown and this made the parol contract binding. An oral promise is not unenforceable if upon an executed consideration. *Jilson* v. *Gilbert*, 26 Wis. 637 ; *Pinney* v. *Pinney*, 2 Root 191. If a person requests another to become surety for the

appearance of a third person charged with the commission of an offense, and promises to indemnify him from all damages and costs, this is not within the Statute of Frauds, and the promise need not be in writing. *Holmes* v. *Knights*, 10 N. H. 175.

*L. Brame*, on the same side.

*E. Dismukes* and *J. E. Madison*, for the appellees.

COOPER, J., delivered the opinion of the court.

It was not error for the court below to permit an amendment to be made of the affidavit on which the writ of seizure was issued. Louisa Williams and her infant sisters were jointly interested under the contract with Mrs. May in the fruits of their labor. In the original affidavit Louisa Williams had demanded in her own name the interest of all the laborers in the crop, and the amendment was necessary to bring before the court all the joint-owners of the claim propounded. A suit to enforce a laborer's lien is, under the Code of 1880, c. 52, a proceeding partly *in rem* and partly *in personam*. A general judgment is rendered *in personam* for the amount found due, and the property seized is condemned to be sold for its satisfaction. It is the amount demanded and not the value of the property seized which determines the jurisdiction of the court. Code 1880, § 1365. In suits of this character the question of costs is left to the discretion of the presiding judge, and costs should be awarded in each case against that party by whom, in view of all the circumstances, it is equitable they should be borne. Code 1880, § 1369.

On the trial the defendant proposed to prove that in the spring of the year in which the crop sued for was planted, the husband of the plaintiff, Louisa Williams, was incarcerated in the jail of Noxubee County on the charge of grand larceny, and that Louisa Williams applied to her, the defendant, to become surety on his bail-bond, and verbally agreed that if the defendant would become so bound the interest in the crop to be raised which belonged to Louisa and to her infant sisters should remain in the hands of the defendant to indemnify her against the default of the husband; that in consideration of such agreement the defendant became surety as requested; that Williams, the accused, had absconded, and that

a judgment *nisi* had been rendered against the defendant for the sum of two hundred dollars upon the forfeited bond. Upon the objection of the plaintiffs the evidence was excluded by the court as being a parol promise to answer for the "debt or default or miscarriage of another," and, therefore, unenforceable under the Statute of Frauds.

There is great conflict of authority upon the question whether a parol promise to indemnify one who becomes surety for another at the request of the promisor is within that clause of the Statute of Frauds which declares that "no action shall be brought whereby to charge the defendant upon any special promise to answer for the debt or default or miscarriage of another person, unless the promise or agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person by him or her thereunto lawfully authorized." In England the courts have vacillated upon the question, and the courts of this country have, to a considerable extent, taken position with that view which at the time of the several decisions, prevailed in England. In *Thomas* v. *Cook*, 8 B. & C. 728, a promise to indemnify was held not to be within the statute. In *Green* v. *Cresswell*, 10 Ad. & E. 453, the contrary view was announced. In *Cripps* v. *Hartnoll*, 4 B. & S. 414, the distinction was drawn between those cases in which the promisee was surety upon a bond by which the principal was bound to answer a criminal charge and those in which the bond was given in a civil cause, the court saying that there was no implied contract on the part of a principal who was bound over to answer a criminal charge to indemnify his surety, and, therefore, that the promise of the promisee did not come in aid of that of another person, for which reason it was decided that the promise in that case was not obnoxious to the statute. In *Wildes* v. *Dudlow*, L. R. 19 Eq. 198, Vice Chancellor Malins treated the case of *Green* v. *Cresswell*, as virtually overruled by *Cripps* v. *Hartnoll*, and in *Reader* v. *Kingham*, 13 C. B. N. s. 344, it was held that a promise to be within the statute must be made to the promisee to pay a debt due by another to him. It may, therefore, be considered that in England

*Green* v. *Cresswell* has been overruled, and the doctrine of *Thomas* v. *Cook* re-established.

In this country the States of Massachusetts, Maine, New Hampshire, Georgia, Kentucky, Iowa, Indiana, Minnesota, Wisconsin, Vermont, and Connecticut have followed the authority of *Thomas* v. *Cook*, while South Carolina, North Carolina, Missouri, Alabama, and Ohio have adhered to the rule announced in *Green* v. *Cresswell*. See authorities cited in Browne on the Statute of Frauds, §§ 161-161 c.; *Anderson* v. *Spence*, 72 Ind. 315. In this conflict of American authority, produced in no inconsiderable degree by the inconstancy of the English courts, the weight in numbers is in favor of the rule that such promises are not within the statute; but an examination of the cases holding this view discloses equally as great conflict among themselves as to the principle upon which the decisions are rested. In *Cripps* v. *Hartnoll* a promise to indemnify was held not to be within the statute, because the bond was given in a criminal proceeding, and in such cases, it was said, there is no contract on the part of the person bailed to indemnify the surety. In *Holmes* v. *Knights*, 10 N. H. 175, it was suggested that the principal would not be bond to indemnify the surety unless he had requested him to become bound; but, passing this question by, the decision was put upon the ground that the obligation of the principal, if it existed at all, was an implied one, and its existence would not prevent the surety from proceeding against the parol promisor, who was bound by express agreement, the court saying that if either was to be deemed collateral, the liability of the principal, in such a case, would seem to be collateral to that of the defendant. In *Reader* v. *Kingham*, 13 C. B. N. s. 344; *Wildes* v. *Dudlow*, L. R. 19 Eq. 198; *Aldrich* v. *Ames*, 9 Gray 76, and *Anderson* v. *Spence*, 72 Ind. 315, and many other cases, the promise is held not to be within the statute, because it is said not to be made to the creditor, but to one who is debtor, while in *Dunn* v. *West*, 5 B. Mon. 376, and *Lucas* v. *Chamberlain*, 8 B. Mon. 276, the promise was held to be enforceable, because the implied obligation of the principal to indemnify his surety is said to arise from a subsequent fact, to wit: the payment of the debt by the surety. Upon some one or the

other of these principles the cases holding this view which are most approved by the text-writers are based, though there are others in which other reasons are given, as in *Read* v. *Nash*, 1 Wils. 305 ; *D' Wolf* v. *Rabaud*, 1 Peters 476 ; *Emerson* v. *Slater*, 22 How. (U. S.) 28.

Notwithstanding the number of cases in which these views are announced, we are satisfied, upon an examination of the subject, to take our stand with those courts which hold such promises to be within the statute and unenforceable, unless evidenced by writing. We do not assent to the proposition that a principal in a bail-bond is not under an implied contract to indemnify his surety. He knows that the law requires some one to be bound for his appearance as a condition to his discharge from custody ; he executes the instrument by which the surety is bound, and by the bond he becomes bound as principal to that surety. By executing the bond and accepting the benefits which flow from, he assumes all the duties and obligations which spring out of, his engagement, whether due to the State or to his surety. Why should a different rule be applied where one is bound to appear to answer a criminal charge than would be applicable if the thing to be done was the performance of physical labor, the proper administration of an estate, or the doing of any other act by the principal? Where the engagement is made with the knowledge and consent of the principal debtor, there is in point of law an implied request from the latter to the surety to intervene in the principal's behalf if the latter makes default, and money paid by the surety for the purpose of discharging the claim against the principal is money paid for the use of the principal at his request, which may be recovered from the latter. *Exall* v. *Patridge*, 8 T. R. 308.

It cannot be said that the promise to indemnify the surety is made to him as debtor and not as creditor. It is true that both the principal and surety are bound to the fourth person, the State ; but the contract of the promisor is not to discharge that obligation. He assumes no duty or debt to the State, nor does he agree with the promisee to pay to the State the debt which may become due to it if default shall be made by the principal in the bond. It is only

Conclusion of the opinion.

when the promisee has changed his relationship of debtor to the State and assumed that of creditor to his principal by paying to the State the penalty for which both he and his principal were bound that a right arises to go against the guarantor on his contract. It is to one who is under a conditional and contingent liability that the promise is made; but it is to him as creditor, and not as debtor, that a right of action arises on it. Nor do we think it sufficient to take the case from the operation of the statute that the liability of the principal arises by implication rather than by express contract. The statute makes no distinction between a debt due on an implied and one due by express contract. It is the existence of the debt against the principal, and not the manner in which it originates, that makes voidable a parol promise by another to become responsible for its payment. Nor are we able to perceive that the contract of the promisee is anterior to that of the principal in the bond: Until the surety assumes responsibility by executing the bond, the agreement of the promisor to indemnify is only a proposition which may be withdrawn by him or declined by the promisee. It is only when the proposition is acted on by the promisee that the contract becomes absolute; but at the very instant that it thus becomes a contract, there also springs up an implied contract of the principal to do and perform the same act, viz.: to indemnify the surety against loss. It arises at the same moment, exists to the same extent, is supported by the same consideration, broken at the same instant, and is discharged by the same act, whether it be done by the principal in the bond or by the promisee in the contract to indemnify. It is the debt of the principal, and, being his debt, no third person can be bound for its payment unless the contract be evidenced by writing. This, we think, is the fair import of the statute and it ought not to be refined or frittered away.

                                                      *Judgment affirmed.*