## M. B. GRACE *v.* S. A. FLOYD.

### [61 South. 694]

1. PLEADING.    *Motion against attorney.    Amendments.    Statute of frauds.    Debt of another.    Contract between client and attorney.    Champerty and maintenance.    Contingent fee.    Public policy.    Code 1906, section 775.*

   Where a motion is made to compel an attorney to surrender money alleged to belong to his client, it was error to refuse to allow the attorney to amend his plea of the general issue, so as to give notice of an affirmative defense, consisting of a special contract between himself and his client by which he was to retain the amount sued for, since under Code 1906, section 775 so providing, the court had full power to allow all amendments in pleadings at any time before verdict, so as to bring the merits of controversy between the parties fairly to trial.

2. STATUTE OF FRAUDS.    *Debt of another.    Contract between attorney and client.*

   Where an attorney recovered a judgment for his client in the lower court under an agreement that he was to receive one-half of the recovery, and while the case was pending on appeal, in order to prevent his client from compromising the case verbally agreed with his client that he would pay all cost in the supreme court in case the judgment should be reversed, in consideration of the attorney's receiving the interest and damages, if the case should be affirmed, such an agreement was not violative of the statute of frauds as a promise to answer for the debt, default, or miscarriage of another.

3. SAME.

   Neither the contract by which the attorney was to receive one-half of the amount recovered nor the agreement by which he undertook to pay the supreme court cost in case of reversal was contrary to public policy, the client being fully advised in the premises.

APPEAL from the circuit court of Carroll county.
HON. G. H. McLEAN, Judge.

Motion by S. A. Floyd to compel M. B. Grace, an attorney at law, to pay over money collected by him, alleged to belong to petitioner. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*M. B. Grace,* for appellant.

Did the court below, the circuit court, commit a prejudicial error by sustaining the motion of appellee to exclude all the evidence of appellant and grant the appellee a peremptory instruction to the jury to find for the appellee? Did the court err in excluding evidence of appellant on motion of appellee relative to a subsequent agreement by and between appellant and appellee relative to appellant paying or indemnifying appellee against any loss for supreme court cost in case the suit was reversed? Granting there was such an agreement and promise as related by appellant, although the appellee denies same, who were the parties to this contract, promise and agreement? What kind of an agreement was it, and what was the consideration for same? In fact, was there any consideration to support the agreement? If the judgment of the lower court in the case of *Floyd* v. *Southern Railway Co.* in Mississippi, *supra,* and the appellee compelled to pay the supreme court cost, entailing a loss to appellee in the paying of same, could the appellee successfully, after the payment of same, have maintained a suit in the courts against appellant, on this alleged promise, contract and agreement, to collect from appellant the amount he was forced to pay under execution, as supreme court cost on account of the reversal of the aforesaid cause?

This was an original contract, promise and agreement between appellant and appellee, supported by a consideration which was a sufficient consideration, upon the happening of the contingency, to wit, the reversal of the judgment of the lower court by the supreme court. The

appellant agreeing and promising to pay the appellee, or reimburse him for any damages he may sustain, such as the payment of supreme court cost, if the case is reversed, the appellant was to have all the interest and statutory damages which would be incident to the affirmance of the judgment, and the appellant was to pay to the appellee one-half of the original judgment of the lower court, to wit, one thousand six hundred and seventy-five dollars. This contract and agreement is contingent upon a condition precedent. If the judgment is reversed, no one realizes on it, and the appellant is bound to pay to appellee the amount he is compelled to pay as supreme court cost, thus making him whole. Of course, the execution from the supreme court would have been against appellee and not appellant, and appellee would have been bound to have paid the cost, but he had his simple remedy against appellant, and had appellant refused to reimburse him, he could have maintained a suit at law against him and collected every cent of it.

No argument is necessary to convince this court or anyone else, except the court below and counsel for appellee, in the event the judgment of the lower court had been reversed and the cost paid by appellee, this could have become a debt due and owing, under the terms of the agreement, to appellee. This was not a contract with the clerk of the supreme court by appellant, in the event the supreme court reversed the judgment of the lower court, appellant would pay the clerk of the Supreme Court the amount of the cost in the case; such a contract would have been within the statute of frauds and void as to enforcement by the clerk of the supreme court. It would be an agreement to pay to the clerk of the supreme court a debt due by the appellee to him (clerk of the supreme court) and for which appellant was not liable in any way. But this was a contract and agreement with the party who would have been primarily liable, and, in consideration of certain things, he would pay to, or reim-

burse the party primarily liable for any cost he may have to pay upon the happening of the contingency. For illustration, A promises B in consideration of a consideration moving from B to A that he, A, will pay C a debt which B owes to C; if C is present at the time of the agreement and hears the agreement made between A and B and then A, then and there, promises C that he, A, will pay to C the debt which B owes to C, the contract between A and C would be void, if not in writing, because within the statute; but, if A did not pay the debt as he had contracted to do, B could sue A in an action at law for his breach of contract and failure to pay the said debt, and for any special damages he could show as a consequence of the breach or failure. The contract, promise or agreement, as far as A and B are concerned, would be an original agreement and contract supported by a sufficient consideration, therefore enforceable. This is the exact agreement between appellant and appellee. If one is good, both should be good.

In the case of *Boogher Dry Goods Co.* v. *Kelly,* 84 Miss. 236, 36 So. 258, it was held by the court, where the debtor conveys his stock of goods in consideration of a promise of the transferee to pay certain of the debts which the transferror owed to various parties, the promise was not within the statute of frauds as for one to answer for the debts of another. This is a well-settled principle of law, and the logic of the proposition should be sufficient to sustain our contention without other authorities. *Wear-Boogher* v. *Kelly,* 84 Miss. 236; *Ware* v. *Allen,* 64 Miss. 547; *Lee* v. *Newman,* 55 Miss. 365; *Sweatman* v. *Parker,* 49 Miss. 19; *Putney* v. *Farnham,* 9 Am. Rep. 459.

*S. E. Turner* and *Hughston & McEachern,* for appellee.

We submit that when appellant filed his plea in abatement and the appellee replied thereto, making up an issue, and the same was tried by a court and determined in favor of the appellee, that the judgment should have

been for the appellee.  See *Kendrick* v. *Watkins,* 54 Miss. 495.

The court in its discretion permitted appellant to plead further, whereupon he filed a plea of general issue. A jury was impanneled and testimony introduced by the appellee and the appellant. The testimony of the appellant, being that he had a subsequent agreement with the appellee, some two or three months before the case was affirmed, in which he agreed to indemnify the appellee against any cost he might have to pay in the supreme court and that the appellee agreed that he should have the statutory damages and interest in the event of an affirmance of the case.

At the conclusion of this testimony, which was the only defense to the motion introduced by the appellant, the appellee made a motion to strike out all that part of appellant's evidence with reference to the subsequent contract or second agreement, because said agreement is affirmative matter not pleaded, and because said agreement is without consideration, and could not have been enforced against Mr. Grace, should the cause have been reversed, which motion was sustained by the court. We submit that the action of the court in sustaining the motion was correct. See section 744, Mississippi Code, 1906, and *Railroad Co.* v. *Grant,* 86 Miss. 565. It is true that appellant then offered to amend his plea of the general issue by filing and annexing to said plea a notice of affirmative matter, showing the second contract between appellee and appellant, which motion the court overruled and assigned the following:

"The court holds that a plea in abatement was first filled to the motion in this case, and the court wanted the Supreme court to have the full benefit of all the evidence, as well as this court, and overruled the motion for judgment, and gave the defendant who is an attorney, an opportunity to file his plea and he filed the general issue.

"After the introduction of the testimony in the case he asked to be allowed to amend the general issue by filing

a notice, and the court, feeling that this matter ought to be ended, denied this on the question raised as to the exclusion of the testimony, as it is held in the case of *Emma May* v. *Louis Williams,* 61 Miss. 125, that this promise is within the statute of frauds, and the testimony is excluded on that ground.''

It is true that under our practice the court has full power to allow amendments to be made at any time before verdict so as to bring the merits of a controversy between the parties fairly to trial; but we submit the court was correct in not permitting appellant to file this notice and that his holding was correct.

We submit that the action of the court was correct, because the second contract or agreement, which appellant alleges was made between him and the appellee, is without consideration and could not be enforced. We submit further that such a contract is champertous and should not be recognized in the court. See 3 Am. and Eng. Ency. of Law (1 Ed.), p. 79, 6 Cyc. 853, par. C.

We submit further that counsel realizes this when in his statement of facts and in his argument he asserts that his original agreement did not cover the fee for his service in the supreme court, and that this second agreement should be made to cover that. There is no evidence in the record that the first agreement did not cover his fees in all the courts, and there is no evidence that the second agreement was to cover a fee in the supreme court. The appellant himself testifies that it was an agreement to save the appellee harmless of any cost in the supreme court in the event the case should be reversed. There is no evidence of any fee to be paid counsel for appellee, yet appellant says, in his statement of facts, that appellee possibly agreed to pay the attorneys one-half of whatever of the statutory damages and interest they might collect from appellant. There is no evidence in the record of any agreement with appellant to file suit in Leflore county, yet counsel makes such suggestion in his brief.

We submit further that the conduct of the appellee, as detailed by the appellant, with reference to the litigation with the railway company and the judgment obtained by him against it, shows that he was a man of extremely weak mind and that the relation of attorney and client existed between appellee and appellant, an astute attorney, it is highly probable, if the second contract was made, as detailed by the appellant, that the appellee was overreached. Certainly the contracting parties were not on an equal footing, and hence such a contract is under the ban of the law and should not be enforced by any court.

In conclusion, we submit the following reasons why the judgment of the lower court should be affirmed: 1st. Because the appellee was entitled to a judgment when the issue on the jurisdiction was determined in his favor. 2nd. Because the appellant failed to give any notice of affirmative matter with his plea of general issue, and for that reason the court was correct in sustaining the motion to exclude all evidence of the second contract between appellee and appellant. 3rd. Because the second contract or agreement testified to by appellant, if made, was void and unenforceable.

Argued orally by *M. B. Grace,* for appellant and *E. V. Hughston,* for appellee.

REED, J., delivered the opinion of the court.

S. A. Floyd filed a motion in the circuit court of Carroll county for the court to require M. B. Grace, attorney at law, to pay over the sum of two hundred and fifty-one dollars and thirty-one cents, with interest and statutory damages, which Floyd claims Grace collected as his attorney and refused to pay to him. Mr. Grace as attorney for Mr. Floyd in a suit against the Southern Railway Company, in which a judgment was rendered by the circuit court of Carroll county for the sum of three thousand

and three hundred and fifty dollars. There was an agreement as to fee between the parties, through which Mr. Grace was to receive one-half of all recovered in the suit for his services. An appeal was taken to the supreme court from the judgment of the circuit court. The case was affirmed, and the total amount of the judgment entered was three thousand and eight hundred and fifty-two dollars and sixty-three cents. This included interest on the judgment rendered by the circuit court and five per cent. statutory damages.

Mr. Grace in his testimony states that Mr. Floyd, while the appeal was pending, doubted the success of his case in the supreme court, and desired to compromise with the railway company. He called to see Mr. Grace repeatedly about the matter, and finally stated that he was going to see the general counsel of the railway company and endeavor to compromise his case. Mr. Grace endeavored to persuade him not to compromise his case, and assured Mr. Floyd there was no error in the trial in the lower court, and that he believed the supreme court would affirm the judgment. Mr. Floyd offered to sell Mr. Grace the judgment for a reduced amount. Finally there was an agreement between them that, in consideration of Mr. Grace paying the supreme court costs if the case was reversed, he was to have all the interest on the judgment rendered in the circuit court and the statutory damages of five per cent. if the case was affirmed. Mr. Floyd in his testimony denied making this agreement. After the collection of the full amount due by the railway company, three thousand and eight hundred and fifty-two dollars and sixty-three cents, Mr. Grace paid Mr. Floyd the sum of one thousand and six hundred and seventy-five dollars, being one-half of the original judgment in the circuit court, three thousand and three hundred and fifty dollars, and he declined to pay one-half of the additional sum consisting of interest and statutory damages, and the present proceeding is to collect the one-half so withheld.

Upon filing the motion, a notice thereof was served upon Mr. Grace. He appeared and entered a plea to the jurisdiction, claiming that he was a citizen of Leflore county, and that the circuit court of Carroll county had no jurisdiction in the proceeding. There was a replication filed to this plea, and thereupon the court overruled the plea to the jurisdiction. Then, on permission of the court, Mr. Grace filed a plea of general issue, denying liability as set up in the motion. Upon the issue thus formed testimony was taken in behalf of Mr. Floyd, who was called the plaintiff, then for Mr. Grace, and then for Mr. Floyd in rebuttal. When both parties had rested, the plaintiff moved the court to exclude all the testimony in reference to the agreement made between the parties, by which Mr. Grace was to pay the supreme court costs, in the event the case was reversed, and in consideration to receive the interest and the statutory damages if the case was affirmed, because the agreement was affirmative matter not pleaded, and because it was without consideration, and could not have been enforced against Mr. Grace. The defendant asked permission to file with his plea of general issue a notice setting up the contract referred to. The court sustained the motion to exclude the testimony, and the jury, which it seems had been called, were instructed to find for the plaintiff, Mr. Floyd. Upon sustaining the motion to exclude the testimony the trial judge said: "After the introduction of the testimony in the case he asked to be allowed to amend the general issue by filing a notice, and the court, feeling that this matter ought to be ended, denied this on the question raised as to the exclusion of the testimony, as it is held in the case of *Emma May* v. *Louis Williams,* 61 Miss. 125, 48 Am. Rep. 80, that this promise is within the statute of frauds, and the testimony is excluded on that ground."

The proceeding in this case against Mr. Grace was under section 225 of the Code of 1906, which provides

that an attorney, receiving money for his client and failing or refusing to pay the same when demanded, may be proceeded against in a summary way by a motion before the circuit court where such attorney usually resides, or where he may be found, or before the court in which the money was collected. By the provisions of this section, the attorney, in addition to being required to pay over the money, with legal interest and damages, may be punished by fine and imprisonment, as for contempt, or his name may be stricken from the roll, or his license be revoked, or his right to practice may be suspended until he shall have paid over the money. He shall be proceeded against in the same manner as sheriffs are for money collected and not paid over.

By section 4672 of the Code of 1906, which provides that sheriffs may be proceded against by motion before the court where they fail to pay over money received, the court, at the request of either party in the case, if matters of fact are at issue between them, shall cause a jury to be impaneled to try the issue. While the record in the present case does not show any request for a jury, yet we find no objection to the trial by jury, and the proceeding as to the jury trial seems to have been approved by both parties. Though the statute directs that the attorney shall be proceeded against in a summary way by motion before the court, it seems in the present case that the motion was treated as if it was a declaration in a formal action at law and the proceedings and pleadings all indicate that the parties so treated it. We will not now discuss the correctness of the proceedings in this case, and will in no wise express any opinion on the matter, for the reason that both parties failed to enter any objection thereto, and apparently approved thereof.

The court erred in refusing to allow Mr. Grace to amend his pleading by filing a notice of the affirmative matter, consisting of the second contract between him and Mr. Floyd. Section 775, Code of 1906, expressly pro-

vides that the court shall have full power to allow all amendments in pleadings at any time before verdict, so as to bring the merits of the controversy between the parties fairly to trial. It was decided in the case of *Rodgers* v. *Kline,* 56 Miss. 808, 31 Am. Rep. 389, that where a party introduces evidence material to his cause, but not admissible under his pleadings, and his adversary, making no objection, adduces evidence in rebuttal, but the instructions of the court exclude the evidence not covered by the pleadings, it is then in time for the party introducing such evidence to ask leave to amend his pleadings. Chief Justice GEORGE, delivering the opinion of the court, stated: ''The court had the power to allow the amendment at any time before verdict, and the defendants made the application to amend at the earliest moment after the objection had been made which the amendment was intended to obviate. There was no pretext that it would operate as a surprise on the adverse party, as the investigation had proceeded just as if the amendment had been previously made. Amendments should be liberally allowed, in the furtherance of justice, and in this instance we can perceive no good reason for refusing the application of the defendants.''

The second contract between Mr. Grace and Mr. Floyd was not within the statute of frauds. This case is different from the case of *May* v. *Williams,* 61 Miss. 125, 48 Am. Rep. 80, cited by the circuit judge in rendering his decision. In that case there was an oral promise to indemnify a surety on another's bail bond. The husband of Louisa Williams was in jail, and she applied to Mrs. May to go his bond, and promised that certain crops should remain in her possession to indemnify her against default of the husband. That was a promise made to one person to answer the default of another person. This is a contract made between two parties. Mr. Grace did not agree with a third person to pay any indebtedness owing by Mr. Floyd to that person. There is no promise

made in this case, say, to the clerk of the supreme court, or to the clerk of the circuit court of Carroll county, to answer for any debt or default on the part of Mr. Floyd. There is only an agreement between the parties based upon a consideration. In the case of *Ware* v. *Allen,* 64 Miss. 545, 1 South. 738, 60 Am. Rep. 67, it is decided that a promise made to a debtor to pay a debt which he owes to a third person is not a promise to answer for the debt of another, and therefore not within the statute of frauds. Judge ARNOLD, in delivering the opinion of the court in that case, said: ''A promise made to a debtor to pay a debt which he owes to a third person is not a promise to answer for the debt of another within the meaning of the statute of frauds. The statute applies only to promises made to the person to whom another is answerable''— citing Browne on Frauds, section 156; *Eastwood* v. *Kenyon,* 11 Ad. & E. 438; 3 Parsons on Cont. 24, 26; *Crim* v. *Fitch,* 53 Ind. 214; *Lee* v. *Newman,* 55 Miss. 365.

Counsel for appellee say the contract under consideration is against public policy; that it evidences dealings between attorney and client which should not be approved by courts, and such as should render the contract void and unenforceable. The right of an attorney to make an agreement with a client for a contingent fee, based upon success in the litigation, even to quite a large proportion of the amount involved, is well recognized in this state. In view of the law and the practice touching this matter, the propriety of such employment can hardly now be called in question by us. In this case it appears that the contingent fee was for one-half of the amount to be recovered. This is not unusual. There was a jury trial, and a recovery of a judgment. Under the agreement the attorney and the client had each an equal interest in the judgment. Such was the situation when the second contract was made. It is suggested that this last contract was one for an additional fee. We do not so consider it. It was made between two persons, who both

owned equal shares in a judgment. It is true that the relation of attorney and client existed between the parties. But this contract was a business transaction, separate from and independent of the agreement for a contingent fee and share in the amount to be recovered in the suit. While it was made between attorney and client, it could have been between the client and some other party. An attorney must do nothing to encourage litigation. It can hardly be said that this contract was to encourage litigation. The client was already in the midst of litigation, successfully conducted by the attorney. All of an attorney's relations with his client should be marked by fidelity and fair dealing. He should always be true to the best interests of his client, and he should not at any time take any unfair advantage in any contract or transaction, whether it be about a fee or other contract or matter between them. From appellant's testimony it appears that the client in his case was not taken advantage of, but was treated fairly; for he was willing to sell his share of the judgment for a reduced amount, rather than continue the chances of the case. If the contract in this instance, as claimed by appellant, prevented the client from making a settlement of his case whereby he would have received less than the amount then due him, as shown by the judgment in his favor, and saved him from a possible loss by the agreement to pay the costs in the supreme court in the event of an adverse decision, we cannot see how in the making of it he was unfairly dealt with. We are now only disposing of the case before us, and in doing this we decide that the second contract between Mr. Grace and Mr. Floyd was not void under the law.

As the issue in this proceeding was being presented to a jury for their decision, we believe that the amendment to the pleading should have been allowed, and that the case should have been duly submitted to the jury for their decision.

*Reversed and remanded.*